[Civ. No. 12670.   First Dist., Div. One.   June 14, 1944.]

BURTON S. LaTELLE et al., Appellants, v. AMERICAN TRUST COMPANY (a Corporation) et al., Defendants; SANTA FE LUMBER COMPANY (a Corporation), Respondent.

Leslie C. Gillen and Herbert Chamberlin for Appellants.

Walter S. Brann and Frank L. Crist for Respondent.

PETERS, P. J.—This action involves a dispute between the plaintiffs and cross-defendants Mr. and Mrs. LaTelle and the cross-defendant Santa Fe Lumber Company over the sum of $1,836.45 held by the American Trust Company as a portion of an undisbursed building loan made by the bank to the LaTelles. The lumber company was awarded the money by the trial court. The LaTelles appeal.

This controversy involves a somewhat complicated set of facts. In 1938 the LaTelles purchased a lot in Redwood City on which they desired to build a house. The Redwood City branch of the American Trust Company agreed to lend them $7,700 on an F.H.A. insured construction loan. The loan was to be paid to the LaTelles in four installments of $1,925 each at designated points in the construction. The third payment was payable upon filing the notice of completion and the fourth became payable at a designated period thereafter if no mechanics' liens were filed, and if the house passed F.H.A. inspection. The LaTelles signed a promissory note for the amount of the loan secured by a deed of trust on the real property on which the house was to be constructed.

The contractor—A. J. Wilbe—agreed to construct the house for $7,700. The bank made two of the $1,925 payments to the LaTelles, who in turn paid them over to Wilbe. On June 16 or 17, 1939, the LaTelles moved into the house after having been notified by Wilbe that the house was completed. On June 18, 1939, Wilbe presented for their signatures a notice of completion which averred, among other things, that the house was "actually" completed. The LaTelles were reluctant to sign the notice because they contended that the house was defective in several respects. Wilbe assured them that he would remedy the defects. The LaTelles, nevertheless, refused to sign the notice of completion as it was presented to them. Mr. LaTelle drew a pencil line through the word "actually" and printed in ink above it the word "virtually."

The LaTelles then signed and acknowledged the notice, and Mrs. LaTelle took it to the bank to deliver it and to get the third installment of the loan. There is a dispute as to what happened at the bank. The testimony most favorable to the respondents is that the branch manager told Mrs. LaTelle that the notice could not be recorded as changed, and that Mrs. LaTelle agreed that he might change the wording by erasing the pencil line through the word "actually" and blacking out the word "virtually." Mrs. LaTelle testified that she did not consent to the change. This conflict was for the trial court. At any rate, the notice of completion was filed with the words "actually completed" contained therein, and the third installment of $1,925 was paid to Mrs. LaTelle. She indorsed the check and delivered it to Wilbe.

On August 18, 1939, the contractor Wilbe, not having received his fourth payment, filed a mechanic's lien on the premises for $2,327.36. The bank did not pay over the fourth installment because the house did not pass the final F.H.A. inspection and because there was a mechanic's lien thereon. The LaTelles failed to pay off the lien and the contractor proceeded to foreclose. At the lien foreclosure hearing, the LaTelles defended on the ground that the house was defective in many respects. After a full hearing the trial court allowed the LaTelles a $100 set off for such defects, and entered judgment for Wilbe in the sum of $2,246.41. Thereafter, and on April 7, 1941, the house was sold to Wilbe at the sheriff's sale for the amount of his judgment, subject to the $7,700 deed of trust. No appeal was taken from the judgment in the foreclosure proceedings, and it has long since become final.

The LaTelles defaulted in their payments on their note and deed of trust. On March 10, 1941, the American Trust Company filed and recorded a notice of default and gave notice that it would sell the property on August 27, 1941. On August 26, 1941, the LaTelles filed the present action asking that the sale under the deed of trust be enjoined, and that the bank be compelled to render an accounting to determine what was due under the promissory note secured by the deed of trust. The bank filed its answer on August 11, 1942. In the meantime, the LaTelles, by lapse of time, had lost their right to redeem the house from the judgment rendered in the mechanic's lien foreclosure proceedings. The sheriff issued his deed to Wilbe on April 9, 1942. Wilbe found a purchaser

for the property, but, before he sold the property to such purchaser, he paid off the deed of trust in full. Based on the fact that the bank actually had paid out only three installments of the loan, he contended that all he had to pay the bank to get it to release the deed of trust was these three payments. The bank insisted that he pay to it the full amount of the loan—$7,700. This Wilbe did, and sold the property to third parties. The LaTelles were evicted. Wilbe claimed that the unexpended balance of the LaTelle loan, which, with certain deductions, amounted to $1,836.45, belonged to him. He assigned his claim against the bank to the Santa Fe Lumber Company. It will be noticed that this claim is for the difference between what was actually lent by the bank to the LaTelles and the amount it had been repaid by Wilbe.

The bank thereafter filed a cross-complaint joining the LaTelles and the Santa Fe Lumber Company as cross-defendants, and asking the court to determine to whom it should pay the undisbursed balance of the loan. The bank's answer to the LaTelles' complaint set forth an accounting showing an undisbursed balance of $1,836.45. It will be noted that the bank admits that it holds $1,836.45, and that it makes no claim of ownership to this fund. Both the lumber company and the LaTelles lay claim to the fund.

The two main issues raised by the original complaint of the LaTelles were no longer at issue by the time of trial. The request for injunctive relief had become moot since, by the LaTelles' failure to redeem the property after the sale by the sheriff in his foreclosure of the mechanic's lien, all of their interests in the property were cut off. The accounting issue was taken care of by the accounting of the bank set forth in its answer, the correctness of which is not challenged. Thus, the only remaining issue at the trial was the one presented by the cross-complaint and the answers thereto, namely, the ownership of the undisbursed balance of the loan.

■ As already indicated, the trial court found that the Santa Fe Lumber Company, as assignee of Wilbe, was entitled to this fund. The correctness of this conclusion seems clear. It is somewhat difficult to follow the exact theory of appellants. Their various contentions seem to be based on the argument that the bank agreed to lend them $7,700, and that since $1,836.45 of that amount was not delivered to them,

they are now entitled to receive it. They also argue that equitably they are entitled to damages against the bank because they lost their home for the reason that the bank refused to pay over to them the fourth installment.

These arguments are unsound. The bank agreed to lend the LaTelles money in installments provided certain conditions were fulfilled, one of which was that the house should pass F.H.A. inspection, and another was that the fourth installment would not be paid if mechanics' liens were filed. Since neither of these conditions were met, the bank very properly refused to pay over the fourth installment. Then, instead of removing the lien, the LaTelles permitted the property to be sold, and they failed to redeem. They also defaulted on their payments on the deed of trust. It was judicially determined in the first action that the defects in the premises could be corrected for $100, and they were allowed a credit for that amount. They now own no interest at all in the property. Under such circumstances there is no sound legal theory that supports their contention that they are entitled to the balance of the loan. The money was to be lent to them to build a house. Since they have allowed the house to go out of their hands, and, since the loan has been fully paid off, they have no further interest in the undisbursed balance of the loan. Moreover, they do not claim the undisbursed balance of $1,836.45 as a loan at all. They do not contend that this sum should be lent to them and that they should be required to repay it. They seek a judgment which would give them the right to retain that amount without the obligation to repay.

The right of the Santa Fe Lumber Company to this money is clear. It is the assignee of Wilbe. Wilbe, by virtue of the foreclosure sale, owned the premises subject to the deed of trust. He offered to pay off the deed of trust, but the bank refused to give him a clear title unless he paid off the full amount of $7,700. At that time that was $1,836.45 in excess of what was owed the bank. There can be no doubt that Wilbe was entitled to a cancellation of the deed of trust upon payment of the amount actually owed the bank. The bank erroneously compelled him to make an overpayment. This overpayment was an involuntary one made under business compulsion in order that Wilbe would not lose his sale of the property. Under elementary principles such involuntary overpayment may be recovered. (*Young* v. *Hoagland*, 212

Cal. 426 [208 P. 996, 75 A.L.R. 654]; *Millsap* v. *National Funding Corp.*, 57 Cal.App.2d 772 [135 P.2d 407].) It is that very overpayment—the undisbursed balance of the loan —that is the subject of this action.

The judgment appealed from is affirmed.

Knight, J., and Dooling, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 10, 1944. Schauer, J., voted for a hearing.