[Civ. No. 8123. Third Dist. Sept. 12, 1952.]

CHARLES E. LEWIS et al., Appellants, v. ISADORE
FAHN et al., Respondents.

Albert L. Wagner and E. R. Vaughn for Appellants.

Lewis & Lewis for Respondents.

VAN DYKE, J.—A demurrer was sustained to plaintiffs' second amended complaint. No request was made for leave to further amend and no further amendment having been proffered judgment followed in favor of defendants, from which judgment this appeal is taken.

The complaint contains three counts. The first is for the recovery of moneys paid under duress; the second is supplementary to the first; and the third is an action to recover moneys alleged to be due by contract. By the first count plaintiffs alleged the following: On May 19, 1944, they entered into a written lease with defendants whereby they leased certain real property in Sacramento City, consisting of two contiguous parcels of land in the heart of the city. The lease provided the rental for one parcel should be $725 per month,

except that until the lessees should have completed certain remodeling which the lease provided should be done by them, the rental for the parcel would be $575 per month. Remodeling was not completed until August 9, 1950. Plaintiffs for said period paid the full sum of $725 per month, but only under protest and solely because the defendants made written and verbal threats that unless they did so they (the defendants) would cancel plaintiffs' lease and institute legal proceedings to evict plaintiffs from the leased premises. The payments so made, in excess of the amount properly demandable under the lease, amounted to the total sum of $8,100. The lease provided that as rental for the second parcel plaintiffs should pay the sum of $610 per month, but that during the period of remodeling, and for not exceeding two and a half months, a reduction in the rental for that parcel of $250 per month would be made. The remodeling was completed in two and a half months, but plaintiffs were allowed no reduction and paid the full rental, an excess of $500 over the amount due. This payment likewise was made under protest and solely by reason of the same verbal and written threats under the compulsion of which they paid the $8,100. Under the remodeling provisions lessors had agreed to reimburse the plaintiffs in respect of certain of the expenditures therefor by way of a credit upon accruing rents and these accrued credits amounted to $2,450, which should have been credited upon rents falling due. Notwithstanding the foregoing, plaintiffs paid the full sum accruing, thus paying $2,450 in excess of what was justly due. These payments likewise were made under protest and by reason of the same threats as hereinbefore referred to.

By the third count plaintiffs alleged the following: By the terms of the lease and in respect of the remodeling it had been agreed between the parties, *inter alia,* that if the cost of the remodeling exceeded $20,000 then the defendants would pay to the plaintiffs 60 per cent of such excess up to a total cost of $24,000. The remodeling cost $21,482.18, wherefore defendants became indebted to plaintiffs in the sum of $889.30, being 60 per cent of $1,482.18, which sum had not been paid.

In respect of the remodeling requirements of the lease plaintiffs were guilty of great prolixity in their pleading. The ultimate facts to be pleaded in that respect were the actual completion of the remodeling as required by the contract, the date thereof and the cost, thus fixing the period for the

reduced rental of the first parcel, credit upon rentals of the second parcel and the amount whereby the remodeling cost exceeded $20,000, bringing into play the obligation of the defendants to pay 60 per cent of such excess. But in attempting this comparatively simple task plaintiffs pleaded matter having to do with a great amount of strife which arose between the parties over the proper construction of the agreement between them, including a recital of the history and ultimate result of a suit which they brought against the defendants for declaratory relief in respect of such meaning. There was also pleaded detailed history of the strife over who had the right to dictate the sort of remodeling called for and the extent and cost thereof, coming finally to allegations that each party secured an architect of their own choice to prepare plans and specifications in detail for such remodeling. Both sets of plans and specifications were annexed to the pleading as exhibits thereto. Out of the welter of confusion thus introduced into the pleading by the plaintiffs the simple purpose and scope of the pleading seems to have been largely lost. We think it may fairly be said that the pleading stands as an excellent example of how not to plead. However, we also think that by a careful and studious scrutiny the pleading can be reduced to the matter we have stated.

Just what must be made to appear in order to justify recapture of money paid under duress has been subject to constant change as courts have liberalized the strict common law rules governing such action.

■ "Generally speaking, duress may be said to exist whenever one, by the unlawful act of another, is induced to make a contract or to perform some other act under circumstances which deprive him of the exercise of free will." (17 Am.Jur. p. 873.)

■ It is also said in 17 American Jurisprudence "Duress and Undue Influence," pages 882-885:

"Anciently, duress in law by putting in fear could exist only where there was such a threat of danger to the object of it as was deemed sufficient to deprive a constant or courageous man of his free will, and the circumstances requisite to that condition were distinctly fixed by law. That is to say, the resisting power which every person was bound to exercise for his own protection was measured, not by the standard of the individual affected, but by the standard of a man of courage; and those things which could overcome a person, assuming that he was a prudent and constant man, were not

left to be determined as facts in the particular case, but were a part of the law itself.

. . . . . . . . . .

". . . [D]uress is still often defined as that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind and will of a person of ordinary firmness. By many if not most of the modern authorities, however, the true doctrine of duress is held to be that a contract, deed, or any obligation obtained by so oppressing a person by threats regarding the safety or liberty of himself, or of his property, or of a member of his family, as to deprive him of the free exercise of his will and prevent the meeting of minds necessary to a valid contract, may be avoided on the ground of duress, whether the oppression causing the incompetence to act be produced by what was formerly deemed duress, and relievable at law as such, or wrongful compulsion remediable only by an appeal to a court of equity.

. . . . . . . . . .

"There is no legal standard of resistance with which the person acted upon must comply at the peril of being remediless for a wrong done to him, and no general rule as to the sufficiency of facts to produce duress. The question in each case is, Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of the quality of mind essential to the making of a contract, and was the contract thereby obtained? *Hence, under this theory duress is to be tested, not by the nature of the threats, but rather by the state of mind induced thereby in the victim. The means used to produce that condition, the age, sex, state of health, and mental characteristics of the alleged injured party, are all evidentiary, merely, of the ultimate fact in issue, of whether such person was bereft of the free exercise of his will power. Obviously what will accomplish this result cannot justly be tested by any other standard than that of the particular person acted upon. His resisting power, under all the circumstances of the situation, and not any arbitrary standard, is to be considered in determining whether there was duress.*" (Italics added.)

In 17 Corpus Juris Secundum "Contracts," section 175 (headnote), page 533, it is stated:

"Under the modern doctrine there is no standard of courage or firmness with which the victim of duress must comply

at the risk of being without remedy; the question is merely whether the pressure applied did in fact so far affect the individual concerned as to deprive him of contractual volition; if it did there is duress, if it did not there is none.''

A reading of the California cases of later vintage leads us to believe that the relaxed and modern rule of the subjective test of duress as stated in the foregoing quotations from American Jurisprudence and Corpus Juris Secundum is the controlling rule in California and particularly is this so we think in respect of that form of duress with which we are here concerned and which has sometimes been termed ''illegal business compulsion.'' This type of duress is the subject of an annotation appended to the report of the case of *Ramp Buildings Corp.* v. *Northwest Building Co.*, 164 Wash. 603 [4 P.2d 507, 79 A.L.R. 651], and in our own state has been the subject of discussion in *Young* v. *Hoagland*, 212 Cal. 426 [208 P. 996, 75 A.L.R. 654]; *Millsap* v. *National Funding Corp.*, 57 Cal.App.2d 772 [135 P.2d 407]; *LaTelle* v. *American Trust Co.*, 64 Cal.App.2d 830 [149 P.2d 385]; *McNichols* v. *Nelson Valley Building Co.*, 97 Cal.App.2d 721 [218 P.2d 789]; *Steffen* v. *Refrigeration Discount Corp.*, 91 Cal.App.2d 494 [205 P.2d 727]. In the last case cited it was said at page 498:

''. . . The test of duress is, at its harshest, what would have influenced the conduct of a reasonable man . . . and many courts have relaxed the rule to make the test the state of mind induced in the particular person. . . . Taking the harsher test of the effect on the mind of the average reasonable man we cannot say that the evidence does not support the court's finding that the overpayments herein recovered were made under duress. Whether the individual acted as a reasonably prudent person is ordinarily a question for the trier of the facts.''

█ Tested by the foregoing rules, we think it cannot be said that plaintiffs, appellants here, have failed to state a cause of action for the recovery of moneys paid under duress. The question is a close one, but we think the pleading is sufficient to inform appellants' adversaries of the nature of the cause which they state against them with sufficient particularity to advise them of the issues they will be required to meet at the trial of the action. That is the purpose of pleadings and we do not think that defendants to this action, respondents here, will suffer any prejudice through lack of information which the rules of pleading require the complaint

to give them. Here the pleader has stated wherein the demands were unlawful. Following that is the plea of compulsion. While the plea of compulsion is meager, it is, we think, sufficient to meet the challenge of a general demurrer. It is alleged, in effect, that these payments were made because demanded under a threat that unless they were made the lessors would declare the lease cancelled and bring action in eviction. That the payments so made were not voluntary is, we think, sufficiently made out. Indeed, given an unlawful demand, a threat of groundless litigation unless the unlawful demand be met presents a situation where courts should not too readily listen to a claim by the party extorting the payment that his victim ought to have been a braver man and should have resisted his attack. We are not concerned with whether or not these ultimate facts can be established in proof. Of course it is difficult to see how this compulsion could have persisted to the degree necessary to make out payment under duress over the long period of time involved, and many other difficulties of proof can easily be foreseen. But it cannot be said that proof is impossible when we remember the sensitiveness of credit arrangements to attacks upon business, and the disastrous results that even an unjustified attack upon the very basis and foundation of a business not strongly organized may have. These matters are all matters of fact for the trier of fact to determine.

As to the count in debt, the third count in the complaint, it did, as we have stated, contain allegations as to the obligation of the respondents to repay certain sums expended by appellants in remodeling and the failure of respondents to pay. Without further discussion it appears from that count that the obligation did arise and the breach occurred. We think the count states a cause of action.

The demurrer was both general and special as to each count and respondents invoke the rule that if the pleading be subject to either general or special objections and, the defects being pointed out, the pleader declines to amend, the ensuing judgment must be affirmed if any of the specifications of defects in the pleading are good. Turning to these special grounds of demurrer, we find the first to be that two or more separate and distinct causes of action have been united and not separately stated in that the recovery of sums alleged to have been paid under duress is asked, without a separate pleading, along with a plea for the recovery of

money specifically provided to be paid under the terms of the lease. We think this specification not sound. In the first count the pleader seeks recovery of three groups of payments: 1. That group consisting of the monthly overpayments as to the rental of parcel 1 from the date of the lease to the date of completion of remodeling, and totaling $8,100; 2. The group of overpayments totaling $500 made because respondents refused to allow as credit upon rentals accruing the sum of $250 per month during two months of the time required to remodel; 3. The group of payments totaling $2,450 which ought to have been credited against rentals. We think there is no true distinction between these groups of overpayments and that they are properly asked for in a single count. In addition, plaintiffs recited in the first count that $889.30 was due and owing under the terms of the lease providing that defendants would pay 60 per cent of the excess if the cost of remodeling exceeded $20,000. As noted above, this cause of action was separately stated in the third count. We therefore think that such recitals in the first count should be treated as surplusage.

It is next objected that the pleading improperly unites a cause of action upon a written contract with causes of action for tort, that is to say, actions to recover moneys paid under duress. We think respondents misconceive the nature of the action to recover money paid under duress.

". . . [M]oney which has been paid through duress . . . , or where undue and unconscionable advantage has been taken of a situation or of the pressing necessity of a person, by means whereof payment has been coerced, and which the payee ought not to retain, may be recovered back." (70 C.J.S., § 146, p. 350.)

And however tortious may have been the methods whereby the payments were extorted the law implies a duty to repay when in equity and good conscience that ought to be done and the suit is ex contractu upon that implied promise. As was said in *Philpott* v. *Superior Court*, 1 Cal.2d 512 (headnote 4) [36 P.2d 635, 95 A.L.R. 990]:

"In said action, where plaintiff sought to recover money paid under the contract and alleged a rescission because of fraudulent misrepresentations, and did not elect to ask for the damages which he may have suffered from the tort inflicted upon him by defendants or for the application of equitable remedies, he waived the tort and the action was in *assumpsit* upon a promise implied by law in order to prevent

the unjust enrichment of defendants from the property of plaintiff.''

The joinder complained of was proper.

■ Respondents interposed pleas of the statute of limitations, claiming that the action to recover the sums allegedly paid under duress was barred by various provisions thereof. But the extortionate demands counted upon are alleged to have continued up to the very filing of the action and it is obvious that the plea of the statute of limitations could be no more than a partial defense and would therefore have to be interposed by answer and not by demurrer. (16 Cal.Jur. "Limitation of Actions,'' § 205, p. 610.)

The demurrer contains various charges of uncertainty in the pleading. We think it unnecessary to state these assignments in detail since it will suffice to say that they are directed at allegations needlessly contained in the complaint and having to do with anticipation of defenses resting in estoppel and waiver.

Since the case must be returned to the trial court for further proceedings we think it proper to discuss certain matters concerning the construction of the contract between the parties in respect of remodeling as affected by a pleaded final judgment of the Sacramento County Superior Court obtained in a previous action between the parties for declaratory relief. The complaint. alleges as follows: i'u the early part of 1946 a dispute arose between the parties as to the meaning of paragraph 15 of the lease and appellants herein instituted in said superior court an action for declaratory relief. A judgment was rendered in said action on January 4, 1949, which became final in due course, no appeal having been taken (a copy of the decree is appended to the complaint as an exhibit). Paragraph 15 of the lease provided:

''That *is* is agreed by and between the parties hereto that Lessees shall do certain permanent remodeling of the herein demised premises, as soon as architectural plans can be formulated and building materials obtained, at their own expense (except as hereinafter provided). The general plan being to ultimately connect both parcels of said demised premises into one store, of the 'L' shape design, at the option of Lessees. All of said remodeling shall be done by adhering to the plans and specifications of architect, but upon the advise of, and otherwise in discretion of, Lessees. Lessors agree to supervise all work of remodeling, in behalf of Lessees, without compensation, as time will permit.''

Paragraph 18 of the lease contains certain provisions concerning a method for sharing by the parties of the cost of remodeling. The declaratory decree concerning the rights and obligations of the parties under said paragraph 15 declared as follows:

"That the Lessees should, upon the execution of said lease do and cause to be done certain permanent remodeling and improvements of the demised premises; that to that end, said Lessees are required to procure architectural plans, and specifications prepared by a professional and reputable architect covering in detail the said remodeling and improvement of said premises; that the plans and specifications of said Architect should be prepared and formulated so as to ultimately transform the premises from there then condition into a single store of the 'L' shape design; that said Lessees should cause said plans and specifications to be prepared in a reasonable time and should thereafter proceed within a reasonable time upon the work of causing the same to be carried out and performed by competent supervisors, craftsmen and laborers being excused for any delay in performance only upon Lessees' inability to obtain building materials; that as to minor details regarding such matters as interior decorations, and minor arrangements, the Lessees have the right and discretion to select, and Lessors have the right to supervise all work of remodeling, without compensation. But neither the rights of Lessors nor the right of Lessees, as in this paragraph defined, permit of the Parties or either of them, deviating from the general plan in these Findings outlined and established."

Concerning paragraph 18 of the lease the declaratory judgment stated the following:

"IT IS FURTHER DECREED that while paragraph Fifteenth provides that the alterations and improvements should be made at the expense of Lessors (Plaintiffs), said lease in paragraph Eighteenth provides a mode of partial reimbursement by said Lessors of all sums expended by Lessees in said remodeling and alterations made by said Lessees as in paragraph Eighteenth provided, as follows, to wit:

"(a) For all such sums so expended by Lessees in full, $10,000.00, Lessors shall reimburse said Lessees in full, said reimbursement being made however, (and limited to) by allowance of credit upon rentals accruing thereafter under the terms of this lease, at the rate of $175.00 per month beginning upon the date remodeling actually begins.

"(b) For costs of such alterations and improvements of $10,000.00 and up to $20,000.00 Lessees shall *not* be entitled to reimbursement whatsoever, but shall bear and pay the same at their own cost and expense.

"(c) All costs of the same exceeding $20,000.00 up to $24,000.00, shall be borne *60%* by Lessors and *40%* by Lessees, the reimbursement of such *60%* by such Lessors to Lessees shall be made in case as provided in paragraph (f) hereof.

"(d) All costs of the same in excess of $24,000.00 and not exceeding $27,000.00 shall be reimbursed by Lessors to Lessees by cash in full as provided in paragraph (f) hereof.

"(e) No reimbursement shall be made by Lessors to Lessees for any expenditures so made over and above $27,000.00.

"(f) Lessors shall pay and reimburse to Lessees all sums other than the sum mentioned in paragraph (a) hereof (which by the terms of these Findings they are required to pay) as and when the same are due and payable from Lessees to Laborers, Contractor, Materialmen and others performing services or furnishing materials and supplies in the making of such alterations and improvements.''

It is contended by respondents that while the provisions of the lease concerning remodeling required the appellants as lessees to procure architectural plans and specifications, these plans were subject to the approval of the lessors and must receive their assent. In effect their contention is that the parties merely agreed to agree in the future as to what remodeling should be done and how it should be accomplished, with the consequential result that these provisions concerning remodeling were unenforceable; further that the decree left the matter just where the parties put it by their written agreement.

We do not think the decree of the court is subject to such a construction. When it is considered that the primary object of the declaratory judgment was to establish the respective rights and obligations of the parties in respect of the requirements of remodeling and of the financial adjustments dependent thereon, we do not think it reasonable to hold that the decree in effect merely informed the parties that no enforceable contract was in existence as to those matters, and that it was necessary for them later to agree if anything was to be accomplished in respect of the proposed remodeling. We must assume, since we have here a final judgment of a competent court, that the same was prefaced by a pleading containing the essentials of a plea for declaratory

relief as set out in section 1060 of the Code of Civil Procedure, including allegations that the parties to the suit were interested under provisions of a written contract, construction of which was desired. We think we must further assume that the question of whether or not there were in fact valid provisions in the contract which were the object of construction must have been either admitted for want of denial or raised and litigated; and that the decree of the court established that there were such valid provisions. Declaratory judgments have the same essentials of finality as between the parties as do other judgments; and this by specific provisions of the code section referred to. We think, therefore, that the necessary meaning of the declaratory decree is as follows: That the lessees were obligated to remodel the premises; that to accomplish this remodeling they were required to procure plans and specifications therefor from a reputable architect; and that the plans and specifications should be prepared and formulated so as to ultimately transform the premises into a single store of ''L'' shape design; that if these things were done and the remodeling accomplished pursuant to such plans and specifications by competent supervisors, craftsmen and laborers, the results must be accepted by the lessors as performance of the lessees' obligations to remodel, whether the lessors consented to the plans and specifications or not. Whether or not the remodeling which was accomplished was according to such plans so procured and executed and whether the work did or did not achieve the ultimate result of changing the store into the required design, would be factual matters insofar as it might become necessary to determine the same in further proceedings. Appellants in their complaint did allege that they did these things and generally that they performed their obligations under the remodeling requirements of the lease, as construed by the declaratory decree.

The judgment is reversed with instructions to the trial court to permit the defendants to answer over.

Adams, P. J., and Peek, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 10, 1952.