[Civ. No. 32406.   Second Dist., Div. One.   Feb. 28, 1969.]

MARY LOUISE GOTT, Plaintiff, Cross-defendant and Appellant, v. CHARLES HERBERT GOTT, Defendant, Cross-complainant and Respondent.

Blum & Propper, Ivon B. Blum and Ronald A. Litz for Plaintiff, Cross-defendant and Appellant.

Hill, Farrer & Burrill, Mark E. True, Rex W. Kellough and Joseph St. John for Defendant, Cross-complainant and Respondent.

WOOD, P. J.—This is an action for the partition and sale of real property held by plaintiff (wife) and defendant (husband) as joint tenants. (The action was commenced while divorce proceedings were pending. Final judgment was entered in the divorce proceedings, and no disposition was made therein with reference to the real property.) Defendant cross-complained to quiet title in the property. In a nonjury trial, the court found that the property was purchased with separate funds of the defendant; that the property was placed in joint tenancy for convenience and by reason of duress on the part of plaintiff; and that defendant did not intend to make a gift to plaintiff of any of his separate property. Plaintiff appeals from the judgment that plaintiff take nothing by her complaint and that defendant have title to the property.

Appellant contends that the evidence does not support the finding that defendant did not intend to make a gift to plaintiff of his separate property or the finding that the property was placd in joint tenancy by reason of duress on behalf of the plaintiff.

Plaintiff and defendant were married in 1950, and they have a daughter. There was much discord in the marriage, and they were divorced in 1967. In 1963, defendant purchased a house with money he had inherited from his mother, and title to the property was taken by plaintiff and defendant as joint tenants. (The parties admit that the money was defendant's separate property.)

Defendant testified in substance that the "marriage was a history of disputes"; he wanted to use the money he had inherited to buy a house; plaintiff suggested that he invest the money or use it to buy a business; he intended to buy the house in his "own name"; he took title to the property in joint tenancy because she refused to move into the house with the child if he took title in his own name; he was aware of the survivorship incidents of joint tenancy, and he felt that if he died he wanted the house to go to her so that she could take care of the child;[1] he did not at any time intend to make a gift to his wife of any part of the house; and the taxes and improvements on the house were paid from the money which he inherited.

Plaintiff testified in substance that there had been problems in the marriage before he bought the house; all of the money used to purchase the house was money which he had inherited; he wanted the house to be his own property; if he had purchased the house in his own name, she would not have moved into it; and when he inherited the money, she "left it up to him. He could use it for whatever he wanted to use it for," but she "wouldn't go into a home that wasn't going to be half mine."

Appellant contends that the evidence does not support the finding that defendant did not intend to make a gift to plaintiff of his separate property.

In *Huber* v. *Huber*, 27 Cal.2d 784, 788 [167 P.2d 708], it was said that "parol evidence is admissible to establish the absence of an intention to make a gift of either separate or community property, although the instrument of conveyance is made by the husband to the wife alone or as a joint tenant with him or is from a third person to the wife or to both as joint tenants at the husband's direction . . ." In the present case, although title to the property was taken in joint tenancy, there was evidence that the property was acquired with, and improved by, the separate property of the defendant; there had been many marital disputes before the property was acquired (defendant left the family residence on some of those occasions) ; plaintiff insisted that she and the child would not move into the house unless it was acquired in joint tenancy; defendant, who was aware of the survivorship incidents of joint tenancy, desired that the child have a home

---

[1]The record shows that the child, who is about 16 years of age, expressed a desire to live with defendant, and she presently lives in the house with the defendant.

in the event of defendant's death; and defendant testified unequivocally that he did not intend to make a gift of his separate property to the plaintiff (see *Horsman* v. *Maden,* 48 Cal.App.2d 635, 640-641 [120 P.2d 92]; see *De Boer* v. *De Boer,* 111 Cal.App.2d 500, 505 [244 P.2d 953]). In the *De Boer* case (*supra,* p. 506) it was said: "Where title is taken in the name of the wife the testimony of the husband that he did not intend to make a gift of his separate property or of his interest in the community property, if believed by the court, is sufficient to overcome the presumption that the property is the separate property of the wife." ▮ In determining whether the property was defendant's separate property or joint tenancy property, the court was not bound by the form of the deed (see *Faust* v. *Faust,* 91 Cal.App.2d 304, 308 [204 P.2d 906]), and could properly consider the situation of the parties when the property was acquired and the motive of the defendant in acquiring the property (see *Williamson* v. *Kinney,* 52 Cal.App.2d 98, 102 [125 P.2d 920]). In *Horsman* v. *Maden* (*supra,* p. 641), where it was claimed that an instrument in writing constituted a gift to the wife and changed the status of property, it was said that the intention of the husband in executing such instrument becomes "the all-important and controlling question." ▮ The evidence in the present case supports the finding that defendant did not intend to give any of his separate property to plaintiff. There is no merit to appellant's assertion that defendant's intention (not to make gift) was not communicated to plaintiff. The record shows, among other things, that they had a dispute as to whether defendant would use the inherited money to buy a home or to invest in a business; defendant told her that he would buy a home as his own property and that he did not want her to have any part of it; and he asked her to go to an attorney and have a document prepared to indicate that the down payment on the property was his separate property "in the event of a divorce."

▮ Appellant further contends that the evidence does not support the finding that the property was placed in joint tenancy by reason of duress on behalf of the plaintiff. Said finding (Finding No. 5) was as follows: "That defendant and cross-complainant only allowed the property to be placed into joint tenancy with himself and the plaintiff and cross-defendant for two reasons, to wit: (a) Duress—in that the wife stated that she would not move into the house if he were to take title in his own name rather than as a joint tenant with

her; (b) Convenience — in that if defendant and cross-complainant died that his child would still have a home to live in with the house still being in his wife's name at such time as he might have passed away."

It should be noted that finding 5 was in effect complementary to finding 4, which provided: "That the defendant and cross-complainant did not at any time intend to make a gift to the plaintiff and cross-defendant of any part of his separate property as reflected in the real estate." Finding 4 was sufficient in itself to support the court's determination that the status of defendant's separate property was not changed by gift. Thus, finding 5, which recited evidentiary facts relating to defendant's intention or motive in acquiring the property in joint tenancy, was in effect surplusage, and explanatory of finding 4. Even if finding 5 were deemed essential to the judgment, the evidence supported that finding. There had been a history of marital discord as of the time when defendant sought to buy a house with the money which he had inherited; plaintiff adamantly refused to move into the house, and refused to permit their only child to move into the house, unless the property was taken in joint tenancy; the child was 12 years of age at that time, and presumably plaintiff's threats indicated an intention on her part to live apart from defendant and to seek custody of the child; and defendant, who was concerned with the child's welfare, acceded to plaintiff's demands so that the child would have a home during defendant's life and after his demise. Appellant's assertion that defendant "was free to say no" to her threats is not significant when considered in the light of all the circumstances under which the threats were made, and when considered with respect to defendant's state of mind which was induced by the threats. In *Lewis* v. *Fahn,* 113 Cal.App.2d 95, 99-100 [247 P.2d 831], it was said that the California cases have adopted the modern rule of the subjective test of duress under which duress is to be tested, not by the nature of the threats, but rather by the state of mind induced thereby in the victim; and that whether the victim acted as a reasonably prudent person was a question for the trier of facts.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 23, 1969.