[Civ. No. 23471. Fourth Dist., Div. Two. Mar. 15, 1983.]

NINI MYRNA TAN et al., Plaintiffs and Appellants, v.
CALIFORNIA FEDERAL SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

---

COUNSEL

Fred Crane, Mark A. Hiller and Alan L. Green for Plaintiffs and Appellants.

William W. Berryhill, Cohen & Ziskin, Ziskin, Rubenstein, Kaplan & Crowe, Zeskin, Pancione, Kaplan & Crowe, Terry S. Kaplan, Peter D. Collisson and Ronald J. Sokol for Defendants and Respondents.

McKenna, Conner & Cuneo, Aaron M. Peck, Terry O. Kelly, Daniel H. Willick and C. Steven McMurry as Amici Curiae on behalf of Defendants and Respondents.

---

OPINION

**KAUFMAN, J.**—Plaintiffs appeal from a judgment of dismissal after the trial court sustained defendants' general demurrer with leave to amend and plaintiffs elected not to amend. For convenience the defendants collectively will be referred to as California Federal.

California Federal is a private mutual savings and loan association chartered by the Federal Home Loan Bank Board pursuant to section 5(a) of the Federal Home Owners' Loan Act of 1933 (12 U.S.C. § 1461 et seq.). On April 5, 1976, California Federal made a loan of $102,800 to Raymond G. and Juli A. Wilson evidenced by a promissory note secured by a deed of trust on their residential real property located at 4732 Pearce Street, Huntington Beach, in the State of California. Both the note and deed of trust contained a due-on-sale clause purporting to give California Federal the right to declare the unpaid balance of the loan immediately due and payable in the event the property or any interest therein was sold or otherwise transferred or conveyed by the borrowers. The promissory note contained a "prepayment privilege" provision that called for payment of a premium or penalty in the event of certain prepayments.[1]

---

[1]The "prepayment privilege" provision read: "The undersigned [promissor] reserve(s) the privilege of prepaying all or any part of the principal of this Note on any regular payment date; provided, however, that when the aggregate amount prepaid in the prior twelve (12) month period plus the amount of the present prepayment exceeds twenty percent (20%) of the original principal amount of this Note, the undersigned agree(s) to pay the Association concurrently with

On or about September 26, 1976, the Wilsons sold and conveyed the property to Richard L. and Doris I. Newman who took the property subject to the deed of trust. At the Newmans' request, California Federal agreed to accept their loan payments under a reservation of rights agreement. The Newmans then sold a partial undivided interest to Paul L. Callihan. Together, the Newmans and Paul Callihan sold and conveyed the property to Philip V. and Marie Currie. The Curries then sold a partial undivided interest in the property to George Gosling. Except for the original transfer from the Wilsons to the Newmans, California Federal apparently had no knowledge of the intervening transfers. On April 17, 1977, the Curries and George Gosling sold and conveyed the property to plaintiffs.

On or about June 9, 1977, plaintiffs' attorney advised California Federal the property had been conveyed to plaintiffs and requested that California Federal execute a new reservation of rights agreement. Having learned of the intervening transfers, California Federal refused to execute a new reservation of rights agreement with plaintiffs, suggesting the original Newman reservation of rights agreement should be assigned to plaintiffs and executed by the intervening transferees. Plaintiffs declined to follow that procedure.

California Federal then gave notice that it was exercising the due-on-sale clause in the deed of trust, and on April 18, 1978, caused to be recorded a notice of default and election to sell under the deed of trust.

Plaintiffs then instituted this action seeking primarily declaratory and injunctive relief against the threatened foreclosure. After obtaining a preliminary injunction, plaintiffs, however, sold the property to persons not parties to this action. Although California Federal was demanding payment of the loan in full on the basis of the due-on-sale clause it nevertheless demanded as a precondition to reconveyance, payment of a prepayment penalty of $3,688.80 in addition to the unpaid balance of principal and interest and foreclosure costs. Plaintiffs objected to the payment of the prepayment penalty as well as one or more of the other sums demanded by California Federal but nevertheless paid the full amount in order to effectuate their sale of the property.

Plaintiffs thereupon filed an amended and supplemental complaint seeking a declaration of the correct amount owing to California Federal on account of the note and deed of trust, damages on account of their economically coerced overpayment to California Federal, and damages for slander of title resulting from

---

and in addition to such prepayment an amount equivalent to six (6) months' interest on the amount by which such aggregate amount prepaid (including the present prepayment) exceeds twenty percent (20%) of the original principal amount of this Note at the rate of interest prescribed herein."

California Federal's publishing and recording the notice of default. Injunctive relief was also sought.

California Federal generally demurred to the amended and supplemental complaint contending that no cause of action was stated because a regulation of the Federal Home Loan Bank Board preempted state law and authorized it to exercise the trust deed's due-on-sale clause on sale of the property. It further asserted the amounts demanded from plaintiffs as a condition to its releasing its lien on the property were proper. In opposition to the demurrer and as the primary basis for their lawsuit, plaintiffs asserted that California Federal was not entitled to exercise the trust deed's due-on-sale clause automatically and without a showing that its security would be impaired by plaintiffs' sale of the property in accordance with *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], and that state law was not preempted by the federal regulation.

In its opposition to California Federal's demurrer, however, plaintiffs also asserted: "Even if federal law preempts with respect to enforcement of the due-on sale clause, defendant cannot collect a prepayment penalty if a loan is paid off through enforcement of the due-on sale clause." After referring to a Federal Home Loan Bank Board regulation prohibiting imposition of a prepayment charge upon exercise of a due-on-sale clause in respect to loans on borrower occupied homes made by federal savings and loan associations after July 31, 1976, plaintiffs noted the loan involved in this case was made prior to that date. Plaintiffs urged, nevertheless, that the bank board was on record as stating that the enforcement of a due-on-sale clause and the simultaneous demand for a prepayment penalty in connection with the payment resulting from the exercise of the due-on-sale clause "is unfair."

The trial court sustained California Federal's demurrer with leave to amend. However, plaintiffs declined to amend and a judgment of dismissal was entered. This appeal ensued.

In an opinion filed July 2 and modified July 31, 1981, this court concluded state law was not preempted and the *Wellenkamp* rule was applicable, precluding automatic exercise of the due-on-sale clause. We therefore reversed the judgment of dismissal.

However, the United States Supreme Court noted probable jurisdiction and in an opinion issued June 28, 1982, determined the regulation issued by the Federal Home Loan Bank Board effective July 31, 1976 (now 12 C.F.R. § 545.8-3(f) (1982)), governing due-on-sale clauses in the security instruments of federal savings and loan associations preempted the law of the State of California and precluded application of the *Wellenkamp* rule to federally

chartered savings and loan associations. (*Fidelity Federal Sav. & Loan Ass'n* v. *de la Cuesta* (1982) 458 U.S. 151 [73 L.Ed.2d 664, 102 S.Ct. 3014].) On the basis of that decision the judgment of this court in this case was vacated and the case was remanded to us for further consideration in light of the Supreme Court's decision.

 We recalled the remittitur and invited counsel for plaintiffs to submit a supplemental letter brief setting forth any argument why the judgment of the trial court should not be affirmed on the basis of the United States Supreme Court's decision in *de la Cuesta*. Plaintiffs filed a supplemental letter brief making in substance two contentions. First, noting that the trust deed in this case is a "preregulation" trust deed, that is, it was created prior to the effective date of the federal regulation, plaintiffs contend the preemptive effect of the federal regulation on "preregulation" trust deeds was not decided in the Supreme Court's *de la Cuesta* decision. Plaintiffs acknowledge the Supreme Court indicated in footnote 24 of its opinion that before the *Wellenkamp* decision California law permitted the automatic exercise of a due-on-sale clause in the event of an outright sale of the property and that therefore federally chartered savings and loan associations are at liberty automatically to exercise due-on-sale provisions in trust deeds on California property created prior to the effective date of the federal regulation. However, it is contended that the Supreme Court's conclusion was based on an erroneous interpretation of state law which it is urged is not binding on this court because state courts have paramount authority to construe state law.

In response California Federal and amicus urge the Supreme Court in its *de la Cuesta* decision determined the federal regulation preempts state law even as to "preregulation" trust deed due-on-sale clauses; the determination set forth in footnote 24 of the Supreme Court's decision constitutes the law of the case; the Supreme Court's determination as to what California law was before the *Wellenkamp* decision was not incorrect; and even if it was, this court is not at liberty to redetermine the question contrary to the Supreme Court's determination. As a backup, California Federal and amicus also urge that, failing all else, the Garn-St. Germain Depository Institutions Act of 1982 (the Garn Act) signed into law on October 15, 1982, expressly preempts state law both prospectively and retroactively except for a so-called "window period" during which state law will control as to certain institutions not including, however, federal savings and loan associations.

In a responding supplemental letter brief plaintiffs contend, in essence, that the Garn Act is violative of equal protection and of due process, depriving California residents of their vested right under California Civil Code section 711 to transfer real property unencumbered by unreasonable restraints on alienation and, further, unlawfully infringes on traditional aspects of state sover-

eignty in violation of the Tenth Amendment to the United States Constitution. California Federal and amicus insist that the constitutionality of the Garn Act is not properly before us, but contend in any event that the act is fully constitutional.

■ Plaintiffs' second principal contention for reversal of the judgment is that there is "an additional legal issue which remains to be decided, that is, the propriety of California Federal's prepayment charge upon the plaintiffs' payment of the accelerated loan." Plaintiffs urge that even if California Federal was within its rights in exercising the due-on-sale clause, its demand for a prepayment penalty on the amount to be paid as a result of its exercise of the due-on-sale clause was unlawful on either of two bases: (1) California Federal having demanded full payment under the due-on-sale clause, the full amount was due under the terms of the note and there was no prepayment to which the prepayment penalty provision could attach; (2) the prepayment penalty constituted an unlawful penalty or an impermissible attempt to fix liquidated damages (see, e.g., *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 734 et seq. [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]).

California Federal counters with the contention that these issues were not properly raised in the trial court nor in the original appellate briefs and have therefore been abandoned.

■ In respect to whether or not the Supreme Court's *de la Cuesta* opinion controls "preregulation" trust deeds, we find it unnecessary to discuss or resolve the interesting questions raised, save one. The one is whether or not prior to July 31, 1976, the effective date of the federal regulation, California law permitted automatic enforcement of a due-on-sale clause in the case of an outright sale accompanied by transfer of title. We agree with the Supreme Court's discussion in footnote 24 of its *de la Cuesta* opinion[2] that California

[2]Footnote 24 of the Supreme Court's *de la Cuesta* opinion reads: "Pointing out that two of the deeds of trust were executed prior to July 31, 1976, the effective date of § 545.8-3(f), appellees argue that the due-on-sale regulation may not be applied so as to destroy vested rights. Therefore, appellees reason, California law does not conflict with federal law with respect to those two deeds. Appellants respond that § 545.8-3(f) did not interfere with appellees' rights because it merely codified pre-existing law. See n. 4, *supra*.

"When the two deeds of trust were executed in 1971 and 1972, California law permitted the unrestricted exercise of due-on-sale clauses upon outright transfer of the security property, as occurred here. The Board's due-on-sale regulation was then issued in 1976, reinforcing Fidelity's right to enforce the due-on-sale provisions. Not until *Wellenkamp* was decided in 1978 was a lender's right under California law to accelerate a loan in response to an outright transfer limited to cases where the security was impaired. The California Supreme Court's prior cases, which forbade the automatic enforcement of due-on-sale provisions when the borrower further encumbered the property securing the loan, *La Sala* v. *American Savings & Loan Assn.*, 5 Cal.3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971), and when the borrower entered into an installment land contract covering all or part of the security property, *Tucker* v. *Lassen Savings & Loan Assn.*, 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974), permitted the unre-

law did then permit automatic exercise of a due-on-sale clause in such circumstances.

The controlling law prior to the *Wellenkamp* decision was that enunciated in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265]. That case involved the foreclosure of an equitable mortgage. The property owner had executed a promissory note for a certain indebtedness to the plaintiff and had executed a separate instrument providing for acceleration if the owner transferred the property without the lender's consent. The debtor sold the property to the defendant and the plaintiff elected to accelerate the due date of the debt in accordance with the agreement. The debt was not paid and the plaintiff instituted a foreclosure action.

The court upheld the right of the lender to accelerate the due date of the indebtedness upon sale of the property, holding: "In the present case it was not unreasonable for [the lender] to condition its continued extension of credit to the [borrowers] on their retaining their interest in the property that stood as security for the debt. Accordingly, [the lender] validly provided that it might accelerate the due date if the [borrower] . . . transferred the property." (*Id.*, at p. 317.) *Hellbaum* v. *Lytton Sav. & Loan Assn.* (1969) 274 Cal.App.2d 456, 458 [79 Cal.Rptr. 9], and *Jones* v. *Sacramento Sav. & Loan Assn.* (1967) 248 Cal.App.2d 522, 527, fn. 3 [56 Cal.Rptr. 741], reached the same result relying primarily on the *Coast Bank* decision.

Until disapproved or overruled by the California Supreme Court these decisions constituted the law of the State of California on the subject; lower courts were bound by them and would have acted in excess of jurisdiction had they declined to follow them. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

It is suggested that later California Supreme Court decisions had modified the holding of *Coast Bank* so that a due-on-sale provision could not be enforced absent a showing that there was a reasonable need to do so to protect the lender's security. We do not agree. It is true that in *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113], the court held

---

stricted exercise of due-on-sale clauses in cases of outright transfers of the security. See 5 Cal.3d, at 880, 97 Cal.Rptr., at 859, 489 P.2d, at 1123; 12 Cal.3d, at 637-638, 116 Cal.Rptr., at 638-639, 526 P.2d, at 1174-1175.

"Because we find the *Wellenkamp* doctrine pre-empted by a previously promulgated federal regulation and therefore inapplicable to federal savings and loans, appellees are deprived of no vested rights if Fidelity is permitted to enforce the due-on-sale clauses in the two pre-1976 deeds: the savings and loan had the right to accelerate the loans, pursuant to California law, when the deeds were executed, and that power was never diminished by state law. We have no occasion, therefore, to consider whether § 545.8-3(f) may be applied so as to give a savings and loan broader authority to enforce a due-on-sale clause than it had when the deed of trust was executed, or to address appellants' contention that § 545.8-3(f) effected no change in the law." (458 U.S. 151, 170, fn. 24 [73 L.Ed.2d 664, 686, 102 S.Ct. at p. 3031].)

that a due-on-*encumbrance* provision in a deed of trust could not be exercised automatically and without a showing of impairment upon the creation of a junior encumbrance. However, in so doing the court expressly noted the differences between an outright sale of the property and the creation of a junior encumbrance, stating: "The reasoning of these cases [*Coast Bank* and *Hellbaum* among others], while justifying enforcement of due-on-sale provisions clearly does not apply with equal force to restraints against future encumbrances. A sale of the property usually divests the vendor of any interest in that property, and involves the transfer of possession, with responsibility for maintenance and upkeep, to the vendee. A junior encumbrance, on the other hand, does not terminate the borrower's interests in the property, and rarely involves a transfer of possession." (*Id.*, at p. 880.) Summarizing, the court concluded: "Following our ruling upholding reasonable restraints on alienation, we have distinguished the due-on-sale from the due-on-encumbrance clauses; *we have concluded that the lender may insist upon the automatic performance of the due-on-sale clause* because such a provision is necessary to the lender's security. We have decided, however, that the power lodged in the lender by the due-on-encumbrance clause can claim no such mechanical justification. We sustain it only in the case of a trial court's finding that it is reasonably necessary to the protection of the lender's security . . . ." (*Id.*, at pp. 883-884; italics added.) Thus, the court's reasoning in *La Sala* really reinforced the decision in the *Coast Bank* case.

*Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169], involved the right of a lender automatically to exercise a due-on-sale trust deed provision where the debtor-owner had sold the property on an installment land sales contract, retaining legal title. The court held that in those circumstances the due-on-sale provision could not be automatically exercised. However, in the course of its discussion the court clearly distinguished and relied upon the distinction between the situation before it and an outright sale of the property accompanied by transfer of title. In pertinent portions of the opinion it stated: "In *La Sala* . . . we concluded that while the lender may insist on the automatic enforcement of such a clause upon the occurrence of an outright sale by the trustor-obligor, he may not exercise such an absolute power upon the further *encumbering* of the property by the trustor-obligor but may enforce such clause only when enforcement is reasonably necessary to protect his security. [¶] In the instant case we confront the question whether the lender may automatically enforce a 'due-on' clause when the trustor-obligor has entered into an installment land contract covering all or some of the property securing the loan. As will appear, we have concluded that such an executory contract does not necessarily, and in the circumstances of the case at bench in fact did not, justify the enforcement of the clause. . . ." (*Id.*, at pp. 631-632; orig. italics.)

Further: "Thus, upholding the exercise of a 'due-on' clause upon an outright sale of property subject to an equitable mortgage, we had stated in *Coast Bank*

that a lender could insist upon performance of the clause in such circumstances because 'it was not unreasonable for [the lender] to condition its continued extension of credit to [the borrowers] on their retaining their interest in the property that stood as security for the debt.' [Citation.] This was so, we observed in *La Sala,* because '[a] sale of the property usually divests the vendor of any interest in that property, and involves the transfer of possession, with responsibility for maintenance and upkeep, to the vendee.' [Citation.]" (*Id.,* at p. 634, fns. omitted.)

And further: "It is to be emphasized . . . that in the case of the installment land contract the vendor retains legal title until the purchase price has been fully paid. Thus, in the normal case the vendor, having received a small down payment and retaining legal title, has a considerable interest in maintaining the property until the total proceeds under the contract are received; in this he differs markedly from the vendor of property where there has been an outright sale." (*Id.,* at p. 638.)

Thus, *Tucker* did not either expressly or impliedly disapprove or overrule the holding in *Coast Bank.* That this was so is indicated not only by the above-quoted language from the reasoning of the court in *Tucker* but also from the fact that in *Tucker* the court expressly disapproved the case of *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574 [81 Cal.Rptr. 135], to the extent it was inconsistent with *Tucker* (*id.,* 12 Cal.3d at p. 640) while saying nothing critical of *Coast Bank* nor disapproving the *Hellbaum* decision.

Were there any doubt remaining, the decision in *Wellenkamp* itself would dispel it. First of all, the *Wellenkamp* court found it necessary to expressly disapprove the *Hellbaum* decision and to overrule the *Coast Bank* decision. (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at p. 953.) Secondly, as testimony to the fact that it was making a substantial change in the law, the *Wellenkamp* court expressly made its decision not applicable when a lender, prior to the date of finality of the *Wellenkamp* decision, had either enforced the due-on-sale clause or waived enforcement of the due-on-sale clause as a result of an outright sale of the property. (*Id.,* at p. 954.)

■ Turning to the prepayment penalty issue, however, we conclude plaintiffs' position is sound. California Federal having exercised the due-on-sale clause, accelerated the due date of the loan and demanded full payment, the entire unpaid balance was due under the terms of the note itself and there was no prepayment to which the prepayment penalty would attach. The language of the "prepayment privilege" provision rather clearly makes a prepayment penalty payable only upon the debtor's exercise of the reserved privilege to prepay. (See fn. 1, *ante.*) Here, according to the allegations of the amended and supplemental complaint, plaintiffs paid the balance of the

loan not on account of their exercise of the privilege to prepay but, rather, on account of California Federal's demand for full payment in connection with its exercise of the due-on-sale clause.

California Federal purports to find language authorizing it to demand payment of the $3,688.80 prepayment penalty in a provision in the note following the "prepayment privilege" provision. It reads: "If default be made in the payment of any installment of this Note, or in any of the agreements contained in the Deed of Trust securing this Note, or in any other loan documents, the entire unpaid principal balance, interest and other charges (including prepayment charges) relating thereto shall at once become due and payable without notice at the option of the Association."

We do not agree that this "default provision" authorized a demand for payment of a prepayment penalty. The provison does not purport to enlarge on the specified events giving rise to a prepayment penalty; it states only that in the event of a default any prepayment penalty otherwise payable under the terms of the note will be due and payable along with the unpaid balance of principal and interest. The provision tells what is due upon default, but, of course, no liability for a prepayment penalty arises from a default; it arises only upon a prepayment as specified in the "prepayment privilege" provision.

The very best that could be said for California Federal's position is that an ambiguity is created by the language of the "default provision." But that is of little assistance to California Federal, for, as the author of the ambiguity, resolution of the ambiguity must be adverse to its position. (Civ. Code, § 1649; *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 20 [92 Cal.Rptr. 704, 480 P.2d 320].)

We conclude that on the facts alleged by plaintiffs no prepayment penalty or premium was payable under the terms of the note.

Plaintiffs' recovery is not precluded by the fact they actually paid the amount demanded. It is alleged, in substance, that plaintiffs protested the demand and paid the full amount demanded under economic compulsion. Were those facts proved recovery would be proper. (*LaTelle* v. *American Trust Co.* (1944) 64 Cal.App.2d 830, 834 [149 P.2d 385]; see also *Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 567, fn. 4 [83 Cal.Rptr. 394, 463 P.2d 746].)

We do not agree with California Federal that this theory was not encompassed within the pleadings or that these issues were not raised in the trial court. Although the precise theories now advanced were not apparent from the complaint, the facts constituting the illegality were alleged, and the *LaTelle* and

*Paramount Properties* cases were cited to the court and argued in plaintiffs' points and authorities in support of their notice of motion to file a supplemental and amended complaint.

██ California Federal's contention that these issues were not presented in the original briefs on appeal nor in the United States Supreme Court and must therefore be deemed abandoned is of greater concern. Although plaintiffs' original appellate briefs contained considerable argument concerning the proper interpretation of various provisions of the deed of trust in accordance with what was felt to be was the reasonable expectation of the parties, the precise issues now argued were not raised. And the general rule is as California Federal states that the court on appeal "will notice only those assignments pointed out in the brief of an appellant," all others being deemed waived or abandoned. (*Title G. & T. Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515]; *Estate of Randall* (1924) 194 Cal. 725, 728-729 [230 P. 445]; see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4393, and cases there cited.)

However, the rule stated is largely for the convenience of the reviewing court. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 426, p. 4393.) A reviewing court is empowered to decide a case on any proper points or theories, whether urged by counsel or not (*Burns* v. *Ross* (1923) 190 Cal. 269, 275-276 [212 P. 17]; see *Calif. Nat. Supply Co.* v. *O'Brien* (1921) 51 Cal.App. 606, 612 [197 P. 414]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 426, p. 4393), and will exercise that authority under fair procedure in an appropriate case (cf. *Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420, 423-424, fn. 1 [71 Cal.Rptr. 903, 445 P.2d 519]; *Calif. Nat. Supply Co.* v. *O'Brien, supra,* 51 Cal.App. 606.)

This is an appropriate case in which to do so. At the time this case was originally briefed and argued the overriding question in this case and in the numerous companion cases on appeal was whether or not the Federal Home Loan Bank Board's due-on-sale regulation preempted the state law as set forth in *Wellenkamp.* Indeed, we found that issue dispositive in this case in our earlier opinion. Thus, it is probable it was an oversight that these issues were not raised in plaintiffs' original briefs. It was only the intervening and superseding decision of the United States Supreme Court that state law is indeed preempted that brought the present issues to the fore. (Cf. *Meier* v. *Ross General Hospital, supra,* 69 Cal.2d at p. 423, fn. 1.) Moreover, because the case comes up on demurrer and the issues revolve around the construction of the language of the "prepayment privilege" and "default" provisions of the promissory note, the questions presented are ones of law. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].)

We conclude plaintiffs are not foreclosed from raising these issues.

The judgment of dismissal is reversed. In the interests of justice the parties shall bear their own respective costs on appeal.

Morris, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied April 7, 1983, and appellants' petitions for a hearing by the Supreme Court were denied June 29, 1983. Bird, C. J., was of the opinion that the petitions should be granted.