[No. B204550. Second Dist., Div. Two. Nov. 19, 2008.]

EMPLOYERS MUTUAL CASUALTY COMPANY, Plaintiff and Appellant,
v.
PHILADELPHIA INDEMNITY INSURANCE COMPANY, Defendant and
Appellant.

**COUNSEL**

Summers & Shives, Robert V. Closson, Ian G. Williamson; Clifford Hirsch and Robert V. Clossen for Plaintiff and Appellant.

Soltman, Levitt & Flaherty, John S. Levitt, Philip J. Bonoli, Robert Lane Morris; Soltman, Levitt, Flaherty & Wattles, John S. Levitt, Philip J. Bonoli and Robert Lane Morris for Defendant and Appellant.

## Opinion

**ASHMANN-GERST, J.**—Defendant and appellant Philadelphia Indemnity Insurance Company (Philadelphia) and plaintiff and appellant Employers Mutual Casualty Company (Employers) insured Louis Simpson doing business as Villa Park Mobilehome Park (Simpson). Employers and Evanston Insurance Company (Evanston)[1] defended Simpson in *Brogan v. Simpson* (Super. Ct. L.A. County, 2006, No. BC307069) (*Brogan* action) against the "failure to maintain" claims of 188 residents of Simpson's mobilehome park. Employers and Evanston eventually settled for $3 million, allocating $1.2 million to damages and $1.8 million for plaintiffs' attorney fees under Civil Code section 798.85.[2] Evanston assigned its rights to Employers. Employers sued Philadelphia for contribution and prevailed. Philadelphia was required, inter alia, to contribute $164,613.15 for defense fees and costs. Under the supplementary payments coverage in its policies, Philadelphia was required to contribute $400,000 toward the section 798.85 attorney fees on the theory that they were a taxed cost.

Philadelphia appeals, arguing (1) no costs were taxed against Simpson by a court, so it does not have to contribute toward the $1.8 million payment; (2) the plaintiffs in the *Brogan* action were not entitled to attorney fees pursuant to section 798.85, so it cannot be liable for any statutory attorney fees under its supplementary payments coverage; (3) even if it has to contribute toward the $1.8 million payment, it should be pro rated at less than $400,000 because only 109 of the 188[3] plaintiffs in the *Brogan* action were conceivably injured during the relevant policy periods; (4) it should not have to contribute toward the $83,216.76 Evanston paid for independent counsel for Simpson because the cost was not a shared burden; and (5) it should not have to contribute toward duplicative defense fees and costs.

Employers cross-appeals on the grounds that the trial court erred when it did not award prejudgment interest.

We affirm.

---

[1] Evanston is not a party to this action.

[2] All further statutory references are to the Civil Code unless otherwise indicated.

[3] There is some inconsistency in the numbers. The trial court's statement of decision states that there were 188 plaintiffs in the *Brogan* action. In its opening brief, Philadelphia contends that there were 181. The record is clear that 79 of those plaintiffs did not live at Simpson's mobilehome park until after Philadelphia's policies expired. The numbers do not affect our decision. We presume there were 188 plaintiffs.

## FACTS

*The Philadelphia policies*

Philadelphia provided Simpson with consecutive one-year commercial general liability policies from March 2, 1997, to March 2, 1999. Each policy provided limits of $1 million per occurrence.

The insuring agreements stated that Philadelphia would defend and indemnify Simpson with respect to claims seeking damages because of bodily injury or property damage caused by an occurrence within the policy period. The supplementary payments coverage provided that Philadelphia would pay "[a]ll costs taxed against the insured in the 'suit.' "

*The* Brogan *action*

Simpson owns the Villa Park mobilehome park in Long Beach. On December 30, 2003, he was sued by 188 of the Villa Park residents under the Mobilehome Residency Law.[4] They alleged that Simpson failed to maintain Villa Park's sewer system, electrical system, water system, drainage system, gas system, streets, trees and bushes, clubhouse and recreation room, laundry facilities, trash area, car wash area, fences and walls, restrooms and pool. They also claimed that Simpson failed to provide adequate lighting.

Simpson tendered the defense to Employers, Evanston, Scottsdale Insurance Company (Scottsdale)[5] and Philadelphia. Employers and Evanston accepted the tender of defense. Employers appointed Gray, York & Duffy (Gray firm) and Evanston appointed Selman Brietman (Selman firm) to represent Simpson. Simpson retained Lewis, Brisbois, Bisgaard & Smith (Lewis firm) as independent defense counsel under section 2860, subdivision (a).[6] Philadelphia and Scottsdale denied coverage.

The *Brogan* action settled on May 4, 2006, for $3 million (*Brogan* settlement). Employers and Evanston each paid $1.5 million. The *Brogan*

---

[4] Section 798 et seq.

[5] Scottsdale is not a party to this action.

[6] Section 2860, subdivision (a) requires an insurer with a duty to defend to provide independent counsel to an insured if there is a conflict of interest, such as when the insurer has reserved its right to deny coverage. This codifies the rule announced in *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494] (*Cumis*).

settlement allocated $1.8 million of the proceeds to plaintiffs' attorney fees and costs pursuant to section 798.85.[7] The rest covered damages.

Employers and Evanston paid posttender attorney fees and costs in the following amounts: $83,216.76 to the Lewis firm, $196,198.89 to the Selman firm and $461,343.51 to the Gray firm for a total of $740,759.16. Evanston assigned its contribution rights to Employers.

*The present action*

Employers sued Philadelphia and Scottsdale for contribution toward the $3.7 million cost of the *Brogan* action. In particular, Employers sought $823,745.59. The trial was bifurcated into a duty to defend phase and indemnity phase. The parties stipulated to various facts, and also to the admissibility of documents, their discovery, and discovery in the *Brogan* action.

After the first phase, the trial court ruled that Philadelphia and Scottsdale had a duty to defend Simpson.

Following the indemnity phase, the trial court issued a statement of decision and judgment. The trial court applied the "time on the risk" method of allocating the costs associated with the *Brogan* action. The relevant time period was 1995 to 2004, which placed two-ninths of the burden on Scottsdale (1995–1997) and two-ninths on Philadelphia (1997–1999). Employers assumed five-ninths of the burden.

Toward the $1.2 million paid for damages, Scottsdale owed Employers $97,872.34 and Philadelphia owed $154,609.93. To calculate these sums, the trial court multiplied $1.2 million by the time on the risk and the percentage of *Brogan* plaintiffs present at Villa Park during the relevant policy periods.[8] According to the trial court: "Scottsdale and Philadelphia had the opportunity to present evidence that portions of these sums were for injuries and damages beyond the coverage of the policies that Scottsdale and Philadelphia issued to Simpson. This future step would have reduced the sums by the amounts that Scottsdale and Philadelphia proved were paid for claims not covered by their policies with Simpson. By unanimous agreement, however, the parties have decided to waive this opportunity."

Under the supplementary payments coverage, the trial court ruled that Scottsdale and Philadelphia owed Employers contribution of two-ninths ($400,000) of the $1.8 million payment for statutory attorney fees.

---

[7] Section 798.85 entitles a prevailing party under Mobilehome Residency Law to recover reasonable attorney fees and costs.

[8] For Philadelphia, the formula was $1.2 million x (2/9) x ((188-79)/188) = $154,609.93.

Though Scottsdale and Philadelphia argued that the $1.8 million was not "taxed" because no court entered an order of taxation, the trial court opined: "The word 'taxed' does not literally require a court order of taxation. The word 'taxed' properly encompasses this situation, where the settling parties forecasted and compromised their estimates about the sums likely if the matter went to trial and to an eventual court order. [¶] Neither Philadelphia nor Scottsdale gave a restrictive definition for this word 'taxed' in their policies. In fact, they did not define the key word at all. Courts interpret ambiguities in contracts against the drafter, which here would be Philadelphia and Scottsdale . . . . A dictionary definition of a 'taxable' cost is a cost 'proper to be taxed or charged up; legally chargeable or assessable.' [Citation.] Nothing in this dictionary definition requires [a] court order . . . before a cost may be 'taxed.' "

The trial court declined to multiply Scottsdale's and Philadelphia's share of the $1.8 million by the percentage of *Brogan* plaintiffs present at Villa Park during the relevant policy periods (109/188). "This issue turns on whether the $1.8 million sum is more like a fixed or a variable cost. From the insurers standpoint, the $1.8 million cost was fixed. There should be no pro rata reductions to the reimbursements due on this fixed cost. The $1.8 million cost was fixed because it never varied in any way that Philadelphia and Scottsdale would have been able to control. This $1.8 million sum was the parties' compromise on the total fees incurred by the plaintiffs' counsel. The insurers were on the defense side. Defendants and defense lawyers cannot control the activity or billing by the plaintiffs' lawyers. From the defense perspective, then, the plaintiffs' legal bill was a fixed cost because it came in a single undifferentiated lump. The plaintiffs did not care about whether injury or damages was progressive or not. . . . The *Brogan* plaintiffs' attorneys thus had no reason to explore whether their clients' injuries and damages were progressive. With respect to that issue, then, the plaintiffs' legal bill did not vary."

Next, the trial court concluded that Scottsdale and Philadelphia each owed Employers $164,613.15, which was two-ninths of the defense costs. Because Scottsdale and Philadelphia did not participate in the defense, they waived the right to complain about legal fees. Once again, the trial court declined to multiply Scottsdale's and Philadelphia's contribution by the percentage of *Brogan* plaintiffs present at Villa Park during the relevant policy periods. The trial court reasoned that the defense legal bill was a fixed cost.

Finally, the trial court denied Employers' request for prejudgment interest. It found that the amount of damages depended upon a judicial determination based on conflicting evidence.

## STANDARD OF REVIEW

Contractual and statutory interpretations are questions of law reviewed de novo. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) So, too, are questions of law submitted on stipulated facts. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437 [129 Cal.Rptr.2d 436].) But if stipulated facts leave an ultimate question of fact open for resolution, the substantial evidence rule applies. (*Ieremia v. Hilmar Unified School Dist.* (2008) 166 Cal.App.4th 324, 328 [82 Cal.Rptr.3d 658].) When a judgment resolves disputed factual questions, a reviewing court considers the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving conflicts in support of the judgment. (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1408 [34 Cal.Rptr.3d 412].) Because a trial court "has discretion to select a method of allocating costs among insurers with the aim of producing the most equitable results based on the facts and circumstances of the particular case," we review its allocation for an abuse of discretion. (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 112 [105 Cal.Rptr.2d 559] (*Centennial*).)

■ If the requirements of section 3287, subdivision (a) are met, an award of prejudgment interest is mandatory. (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 828–829 [76 Cal.Rptr.2d 743].) The denial of prejudgment interest under section 3287, subdivision (a) presents a question of law we must review on an independent basis. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 27–28 [96 Cal.Rptr.2d 553]; *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 [135 Cal.Rptr.2d 505].)[9]

## DISCUSSION

## I.

### Philadelphia's Appeal

Philadelphia assigns error to the trial court's determination of what it must contribute toward the cost of the *Brogan* action. This attack parses into subissues, which we have taken up below.

---

[9] We decline Philadelphia's invitation to apply an abuse of discretion standard. It cites to *Esgro Central, Inc. v. General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1065 [98 Cal.Rptr. 153]. That case is inapposite. It involved section 3287, subdivision (b). That provision, unlike the one in section 3287, subdivision (a), permits a discretionary award of prejudgment interest on a contract judgment where the claim was unliquidated.

## A. *The law of equitable contribution.*

■ Multiple insurers on the same risk have reciprocal rights and duties that arise out of equitable principles. (*Signal Companies, Inc. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359, 369 [165 Cal.Rptr. 799, 612 P.2d 889].) The loss is distributed in a ratio that reflects the percentage of total coverage provided by each insurer's policy. (*American Continental Ins. Co. v. American Casualty Co.* (2001) 86 Cal.App.4th 929, 937 [103 Cal.Rptr.2d 632].) There are various methods a trial court may choose for determining an equitable allocation. They include time on the risk, policy limits, combined policy limits/time on the risk, equal shares, and maximum loss. (*Centennial, supra,* 88 Cal.App.4th at pp. 112–113.)

## B. *The trial court did not err when it required Philadelphia to contribute $400,000 toward the payment of statutory attorney fees.*

Philadelphia contends that it is not required to contribute to the $1.8 million Employers seeks to recover for attorney fees and costs paid to Simpson in the *Brogan* settlement. This contention lacks merit.

### 1. *The $1.8 million payment represented a taxed cost.*

In the supplementary payments coverage, Philadelphia's policies provided that it would pay "[a]ll costs taxed against the insured in the 'suit.'" The parties dispute the meaning of "taxed."

■ An insurance policy is interpreted according to the plain meaning a layperson would ordinarily give it unless the parties used a word or phrase in a technical sense or it has special meaning due to usage. Ambiguities or uncertainties are resolved against the insurance company so that, if feasible, the policy will indemnify the loss to which the insurance relates. These rules exist to protect the insured's reasonable expectation of coverage. Coverage clauses are interpreted broadly and exclusionary clauses are interpreted narrowly. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 807 [180 Cal.Rptr. 628, 640 P.2d 764]; *Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129]; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

The dictionary defines the verb "tax" as meaning to judicially assess the amount of costs, levying a tax on and making an onerous demand on. (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 1208, col. 1.) According to Philadelphia, the first definition is the one intended by the parties. But

in our view the use of the word "taxed" in Philadelphia's policies is ambiguous. It could narrowly refer to a judicial assessment of costs or broadly to any levy of an assessment. Following precedent, we are required to interpret "taxed" broadly if feasible. We find it feasible to do so without perverting semantics. Thus, we construe the term broadly.

Philadelphia argues the first dictionary definition is the only meaning possible because it coincides with the technical or legal definition of taxed. We are directed to consider California Rules of Court, rule 3.1700(b)(1). That rule sheds no light on our analysis. It contemplates a motion to strike or tax costs that are objectionable and should be eliminated or reduced. Whereas the word "tax" in California Rules of Court, rule 3.1700(b)(1) refers to a reduction of costs, the word "taxed" in Philadelphia's policies refers to an assessment.

In *Prichard v. Liberty Mutual Ins. Co.* (2000) 84 Cal.App.4th 890 [101 Cal.Rptr.2d 298] (*Prichard*), the court held that a settlement following a judgment included the cost award. In Philadelphia's view, *Prichard* establishes that costs can only be taxed against a party after a judgment. But *Prichard* did not reach that issue. Similarly, *Insurance Co. of North America v. National American Ins. Co.* (1995) 37 Cal.App.4th 195 [43 Cal.Rptr.2d 518] does not aid Philadelphia's cause. In that case, an award of attorney fees following judgment was a cost taxed against the insured. This does not establish that costs taxed cannot include attorney fees paid in a settlement.

As a matter of policy and equity, our interpretation is sensible. It permits an insured to settle a claim instead of pursuing an action to judgment and risking a greater liability. It also permits one of multiple insurers to settle an action and seek contribution of taxed costs. Public policy encourages settlement. (*Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609, 615 [68 Cal.Rptr.2d 224].) Additionally, if taxed costs did not include anticipated costs in a settlement, insurers would be discouraged from settling cases with high costs because they would be barred from seeking contribution. Our holding eliminates that dilemma.

 In its reply brief, Philadelphia argues that Employers is estopped from claiming that statutory attorney fees fall within the supplementary payments coverage of the Philadelphia policies. This is so, according to Philadelphia, because there is no evidence that Employers or Evanston paid any portion of the *Brogan* settlement out of their own supplementary payments coverage. Philadelphia did not cite any case authority for this proposition, nor did it advance this proposition in its opening brief, so the argument is doubly

waived. An appellate court can deem an argument waived if it is not supported by analysis or argument in the appellate briefs. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2 [87 Cal.Rptr.2d 654, 981 P.2d 499] ["Moreover, ABC fails to provide any analysis or argument in support of the assertion, which, for this additional reason, is not properly raised."].) Fairness militates against our consideration of arguments first raised in a reply brief. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [142 Cal.Rptr. 429, 572 P.2d 43].)

■ For the sake of being complete, we reject Philadelphia's belated argument on the merits. To apply the equitable estoppel doctrine, four elements must be present: " '(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.' " (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 489 [91 Cal.Rptr. 23, 476 P.2d 423].) We have not been cited to evidence establishing any of the foregoing elements, including that Philadelphia relied to its detriment on Employers and Evanston disavowing the application of their own supplementary payments coverage. Further, it is apparent that Philadelphia took no action. It denied Simpson a defense. This ends the topic.

■ Also in the reply brief, and also for the first time, Philadelphia argues that the "obligation to pay costs taxed to the insured 'arises only after liability is established' " (*Combs v. State Farm Fire & Casualty Co.* (2006) 143 Cal.App.4th 1338, 1346 [49 Cal.Rptr.3d 917] (*Combs*)) and liability was never established in the *Brogan* action. We reject this argument because it was raised for the first time in the reply brief, and because it lacks merit. Though the *Brogan* settlement stated that Simpson was not admitting liability, it established Simpson's liability for insurance purposes. For example, when an insured has to defend itself and then sues an insurer for reimbursement, the insured's reasonable settlement of the underlying action " 'may be used as *presumptive evidence* of [1] the insured's liability on the underlying claim, and [2] the amount of such liability. [Citations.]' [Citations.]" (*Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 515 [42 Cal.Rptr.2d 295] (*Pruyn*).) Additionally, *Combs* did not analyze whether attorney fees in a settlement agreement constitute taxed costs. A case is authority only for a proposition actually considered and decided. (*In re Chavez* (2003) 30 Cal.4th 643, 656 [134 Cal.Rptr.2d 54, 68 P.3d 347].)

### 2. *There was a statutory basis for the $1.8 million in costs.*

Section 798.85 provides that the prevailing party in an action under the Mobilehome Residency Law "shall be entitled to reasonable attorney's fees and costs. A party shall be deemed a prevailing party for the purposes of this section . . . where the litigation is dismissed in his or her favor prior to or during the trial, unless the parties otherwise agree in the settlement or compromise." Pursuant to the settlement agreement, the *Brogan* action was dismissed in Simpson's favor. Nonetheless, the settlement agreement provided that in consideration for the dismissal, the plaintiffs in the *Brogan* action were entitled to $1.8 million in attorney fees.

 According to Philadelphia, Employers cannot recover the $1.8 million it paid for attorney fees because the *Brogan* settlement was silent as to whether the plaintiffs were the prevailing parties. Philadelphia contends that section 798.85 did not authorize attorney fees and they were not recoverable under Code of Civil Procedure section 1033.5, subdivision (a)(10)(B). We disagree. Although the *Brogan* settlement did not specifically say that the plaintiffs were the prevailing parties, they were by virtue of Simpson's agreement to pay $3 million. To conclude otherwise would be to exalt form over substance.

### 3. *There is no basis in the appellate record for reducing Philadelphia's share of statutory attorney fees.*

Philadelphia contends that 79 out of 181[10] of the plaintiffs in the *Brogan* action did not reside in Villa Park until after March of 1999. As a result, Philadelphia contends that it can be asked to contribute to only 109/181 ($1,014,364.75) of the $1.8 million in attorney fees. Applying the two-ninths time on the risk ratio used by the trial court to $1,014,364.75, Philadelphia argues that its equitable share should be $225,414.39 instead of $400,000. This argument is unavailing.

The trial court found that the $1.8 million in attorney fees was a fixed cost that did not change due to the 79 plaintiffs who moved into Villa Park after Philadelphia's last policy expired in 1999. We are invited to apply a de novo standard of review because the parties stipulated to certain facts. But Philadelphia does not explain or establish by argument or citations to the record whether the trial court was asked to resolve the issue of whether the attorney fees were a fixed cost or whether this issue was resolved by stipulation. "It is not our responsibility to develop an appellant's argument."

---

[10] Again, there is inconsistency with the record. According to the trial court, there were 188 plaintiffs.

(*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11 [122 Cal.Rptr.2d 890].) That said, we culled through the stipulations regarding evidence and admissible documents. None of the stipulations establish whether the plaintiffs' attorney fees in the *Brogan* action were fixed. Even though underlying facts were stipulated, the issue of ultimate fact was disputed by the parties. We can only guess that the trial court determined that the attorney fees were fixed after reviewing the discovery and documents that the parties agreed were admissible.

■ Based on the foregoing, the question presented is whether substantial evidence supported the trial court's finding. Philadelphia, however, does not contend that this factual finding was deficient. Notably, an appellant bears the burden of showing that the trial court erred. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [224 Cal.Rptr. 664, 715 P.2d 624] ["It is well settled, of course, that a party challenging a judgment has the burden of showing reversible error by an adequate record."].) Having neglected its responsibility, Philadelphia waived its challenge because " '[a] point not presented in a party's opening brief is deemed to have been abandoned or waived. [Citations.]' [Citation.]" (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1 [54 Cal.Rptr.2d 512].)[11]

Aside from this waiver, Philadelphia's argument is unavailing. It argues: "The claims of each *Brogan* plaintiff are separate and distinct from the claims of every other *Brogan* plaintiff. Although each of the *Brogan* plaintiffs shared the common feature of being a co-plaintiff with 180 [*sic*] others in a single lawsuit, each plaintiff's case was [a] separate lawsuit. The *Brogan* [a]ction was not a class or representative action. As such, each plaintiff's case was entitled to separate consideration. See BAJI 15.00; CACI 5005. Correspondingly, the attorneys representing the Brogan plaintiffs had an equal duty of representing each of their 181 [*sic*] clients. On that basis, the statutory attorney's fees and costs totaling $1.8 million can be allocated per plaintiff in the amount of $9,944.75." The defect in Philadelphia's position is apparent. It did not provide record citations that permit us to determine whether the attorney fees can be segregated by plaintiff.

As we must, we presume that the trial court's factual findings were correct. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154 [178 Cal.Rptr. 642] ["It is

---

[11] Philadelphia cites *Oliver & Williams Elevator Corp. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249] for the proposition that we should review the trial court's ruling de novo. That case explained: "This case was submitted on a stipulation of facts with documents. There was no conflict in the evidence. No oral evidence was introduced. The trial court was not confronted with any question of the credibility of witnesses. Under such circumstances the issue becomes a question of law which can be resolved by an appellate court as well as a trial court." (*Ibid.*) There is no suggestion by the parties that this case is devoid of conflicting evidence. Regardless, there is no way to verify a lack of conflict.

axiomatic in appellate review that a judgment of a lower court is presumed correct."].) Because the plaintiffs' attorney fees in the *Brogan* action were fixed, the trial court did not abuse its discretion when it refused to treat the fees as unfixed and subtract a pro rata percentage regarding injuries occurring outside coverage.

C. *The trial court did not err when it required Philadelphia to contribute $164,613.15 toward defense fees and costs.*

Philadelphia attacks the contribution award of $164,613.15 on two grounds. The first is that the amount is erroneous insofar as it represents contribution toward the $83,216.76 Evanston paid to the Lewis firm as *Cumis* counsel. The second is that it should not have to contribute to the fees and costs of both the Gray firm and Selman firm because they are duplicative.

As discussed below, we do not concur.

1. *The burden of* Cumis *counsel was properly allocated.*

According to Philadelphia, Employers is not entitled to contribution toward *Cumis* fees because the other insurers did not have a conflict of interest and the obligation was not concurrently borne. Philadelphia does not contend that the trial court abused its discretion in allocating the defense costs. Instead, Philadelphia simply argues the issue anew. As a result, the issue has been waived. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775].)

Our analysis could stop here.

In its opening brief, Philadelphia argues that the cost of *Cumis* counsel was not a common burden. But Philadelphia stood to gain if Evanston successfully challenged coverage. Thus, in our view, it was equitable for Philadelphia to share in the cost of Simpson's *Cumis* counsel.

2. *The Gray firm's and Selman firm's fees and costs were properly allocated.*

Next, Philadelphia argues that because Employers and Evanston appointed the Gray firm and Selman firm, "an equitable apportionment of the fees and costs for the duplicate defense should be based on an average total of the fees and costs for these two firms. Put simply, pursuant to equitable consider-

ations, [Employers] is not entitled to recover the attorney's fees and costs in connection with both its, **and** Evanston's, retention of defense counsel."

A familiar defect herein rears its head. There are no record citations backing up the assertion that the attorney fees of the Gray firm and Selman firm were duplicative. They may well have been duplicative, but our job is to analyze record citations, not engage in speculation. Thus, we are in no position to assess whether Philadelphia rebutted the presumption that the cost of defense was reasonable. (*Pruyn, supra,* 36 Cal.App.4th at p. 515 [an insured's reasonable settlement is presumptive proof of the insured's liability and amount of liability]; but see *Safeco Ins. Co. of America v. Superior Court* (2006) 140 Cal.App.4th 874, 880 [44 Cal.Rptr.3d 841] ["On the more precise issue of just how much the nonparticipating coinsurer has to pay, the courts have held that, by its refusal to participate, the recalcitrant coinsurer waives the right to challenge the reasonableness of defense costs and amounts paid in settlement (because any other rule would render meaningless the insured's right to settle)."].)

More importantly, we must adopt all intendments and inferences to affirm the judgment unless the record expressly contradicts them. (See *Brewer v. Simpson* (1960) 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289].) Consequently, we are required to presume that the fees and costs were not duplicative.

## II.

### Employers' Cross-appeal

Employers argues that it was entitled to prejudgment interest because its damages became certain on the date of the *Brogan* settlement.

We disagree.

A. *The law of prejudgment interest.*

The applicable statute provides that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." (§ 3287, subd. (a).)

■ Damages are deemed certain when, though the parties dispute liability, they essentially do not dispute the computation of damages, if any. (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958 [57 Cal.Rptr.2d 141].) "The statute does not authorize prejudgment interest where

the amount of damage, as opposed to the determination of liability, 'depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor.' [Citations.]" (*Fireman's Fund Ins. Co. v. Allstate Ins. Co.* (1991) 234 Cal.App.3d 1154, 1173 [286 Cal.Rptr. 146].)

B. *Prejudgment interest was properly denied.*

To make its case for prejudgment interest, Employers relies on *Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285 [260 Cal.Rptr. 190] (*Hartford*).

In *Hartford*, an insurer settled a case involving a car accident for approximately $1.8 million. The settling insurer sued two nonsettling insurers. It obtained damages awards but not prejudgment interest. The prejudgment interest was awarded on appeal because "the amount of damages recoverable was 'certain, or capable of being made certain by calculation' and was 'vested' in [the settling insurer] on October 14, 1986, the day [the settling insurer] exhausted its primary policy limit and first paid out money under its umbrella policy." (*Hartford, supra,* 211 Cal.App.3d at p. 1307.) Assuming the settling insurer was entitled to recover damages, the only issue was how the trial court would prioritize the policies. "In this respect, the trial court had only two options. . . . This was purely a question of law since the amount of damages under either formula was readily ascertainable by mathematical calculation. Thus, the amount of damages was never 'unliquidated' or 'contingent' but rather, only the legally proper order of priority of the respective policies was uncertain. Under these circumstances, [the settling insurer] is entitled to prejudgment interest." (*Ibid.*)

The record is inadequate for us to apply *Hartford* and second guess the trial court. Though Employers contends that this case was tried on stipulated facts, the record suggests the contrary. The parties stipulated to the admissibility of their discovery as well as discovery in the *Brogan* action. The bulk of that discovery is not in the appellate record, nor is it referenced in the appellate briefs. It is impossible for us to determine what discovery and documents the trial court relied on when it determined that the statutory attorney fees and defense fees were fixed. Similarly, we do not know if any evidence conflicted. Thus, there is an unanswered question as to whether the trial court allocated attorney fees pursuant to a judicial determination based on conflicting evidence and whether the calculation was ascertainable from truthful data supplied by Employers to Philadelphia.

## DISPOSITION

The judgment is affirmed.

The parties shall bear their costs on appeal.

Doi Todd, Acting P. J., and Chavez, J., concurred.