Filed 8/16/22 Svensson v. iO73 Investments CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JONAS SVENSSON,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>iO73 INVESTMENTS, INC., et al.,<br><br>    Defendants and Appellants. | 2d Civil No. B315801<br>(Super. Ct. No. 20CV04285)<br>(Santa Barbara County) |

Tristan Strauss is the Chief Executive Officer, Secretary, and a member of the Board of Directors of iO73 Investments, Inc. (iO73), one of several companies comprising the Headwaters Group (the Group). The Group is engaged in the business of cannabis cultivation and distribution. Strauss and iO73 appeal from a judgment directing the issuance of a writ of mandate. The writ compels them to allow respondent Jonas Svensson to inspect and copy specified documents from the books and records of the "Group and the entities within it." Respondent is a member of iO73's Board of Directors and, according to the trial court, owns

26.5 percent of its outstanding shares.  He is the former Executive Chairman of iO73.

As authority for the issuance of the writ, respondent relied on Corporations Code sections 1601 and 1602.[1]  Section 1601 permits a shareholder to inspect the books and records of the corporation and its subsidiaries.  (*Id*., subds. (a)(1), (a)(3).)  Section 1602 permits a director to inspect and copy the same books and records.

Appellants contend that sections 1601 and 1602 do not authorize respondent to inspect and copy the books and records of three companies (the "touching companies") included within the Group because they are not subsidiaries of iO73 and respondent is neither a shareholder nor a director of these companies.  We affirm.

*Related Pending Action*

Respondent's petition for a writ of mandate arose out of a related Santa Barbara County action, *Svensson v. iO73 Investments, Inc., et al.*, No. 20CV01556 (the Related Case).  The same judge presided over the Related Case and the writ proceeding.

Respondent alleges that he "filed the 'Related Case' for damages after his termination as the Executive Chairman of iO73 . . . ."  The trial court stated:  "The Related Case . . . contains causes of action against [appellants] for breaches of an Employment Agreement, Shareholders' Agreement and Restricted Stock Award Agreement.  [Respondent] also brought a Shareholder Derivative claim for breach of fiduciary duty."

---

[1] All statutory references are to the Corporations Code.

2

In the Related Case respondent filed a motion to compel iO73 to produce various records pertaining to the Group. In its ruling on respondent's petition for a writ of mandate, the trial court stated: "The court notes the role that the Related Case has played in relation to this Writ proceeding. At the time the motion to compel was litigated in the Related Case, it was argued by [appellants] that the discovery being sought should be addressed by a Writ of Mandate. And in this Writ proceeding, it has been argued [by appellants] that adequate relief exists in the Related Case[] such that the Writ proceeding should not have been pursued. [Respondent] correctly commented that these assertions require a ruling in the Writ proceeding, and the court agrees."

Pursuant to Evidence Code sections 459 and 452, subdivision (d), respondent requests that we take judicial notice of his motion to compel and supplemental declaration filed in the Related Case. We grant the request, which is unopposed.

*The Group*

iO73's corporate counsel declared: "Headwaters Group is not a legal entity. . . . iO73 is one of a group of corporations that do business under the name of Headwaters. [¶] . . . These corporations are divided into two general groups – the so-called 'touching' companies, and the 'non-touching' companies. The former group engages in the cultivation, harvesting and distribution of cannabis and its byproducts. The latter group provides management services to the touching companies and other companies engaged in the cannabis industry, but they do not engage in the handling or 'touching' of cannabis. [¶] . . . iO73 is the parent company of four subsidiaries that together comprise the non-touching companies. The touching companies consist of

3

three corporations, which are separate legal entities. [Respondent] has no shareholder interest in, and does not serve as a director of, the touching companies."

In their opening brief appellants assert, "[T]he separation between 'touching' entities (meaning entities engaged in business that require licensing for activities involving cannabis) and 'non-touching' entities (meaning those entities that do not require licensing) is deliberate and designed to comply with California regulations governing cannabis cultivation and distribution."

*Appellants' Opposition in the Trial Court*

In their written opposition to respondent's petition for a writ of mandate, appellants argued: "[Respondent] is only a shareholder of record of . . . iO73 and its so-called 'non-touching' companies.  He is not a director or shareholder of iO73's touching companies.  [Record citation.]  Accordingly, . . . in the event this Court is inclined to grant any of [respondent's] requests, they should be limited to the records of iO73 and its non-touching companies."

At the hearing on respondent's petition, appellants' counsel stated:  "[i]O73 is willing to produce documents relating to [i]O73 and its subsidiaries.  [Respondent] has a right to those within the parameters of the law . . . ."

*Respondent's Reply to Appellants' Opposition*

In his written reply to appellants' opposition, respondent protested, "The 'touching companies' have always been included in iO73's accounting."  Respondent summarized "pertinent facts" concerning the touching companies.  These facts were allegedly "established" by his supplemental declaration in the Related Case.  The facts are:  (1) Strauss, the sole owner of the three touching companies, granted to iO73 an irrevocable option to

4

acquire, without further consideration, all of his shares in the touching companies. (2) "The Headwaters Group has always managed its finances on a consolidated basis. That is, while the finances of each of the separate companies also have been accounted for, we always consolidated them, as well. When it came to calculating the EBITDA [Earnings Before Interest, Taxes, Depreciation, and Amortization] on which bonuses were based, it was the EBITDA of the entire Headwaters Group." (3) "[T]he 'touching companies' . . . are the companies within the Headwaters Group that are involved in the actual growing, harvesting, etc. of cannabis, which generates the vast majority of the revenues of the Headwaters Group."

At the hearing on the petition, respondent's counsel argued: "[A]ll of the companies, including the cannabis touching ones are . . . [a] single corporate group. . . . [T]hey've created a structure where [i]O73 does not directly own [the touching companies] but has a free zero-dollar [option] to acquire all of them whenever it wishes. . . . [I]t's essentially a . . . legal farce to say that [the touching companies are] no[t] subsidiaries and there is no interest that [i]O73 has in the entities when . . . all of the value of the company is in the cannabis touching entities which [i]O73 can acquire at any time for nothing."

*Trial Court's Ruling*

The trial court ruled: "The corporate subsidiary relationships are sufficiently intertwined to permit discovery relating to the entire Headwaters [G]roup. The court previously reached this conclusion in the Related Case, and the court refers the parties to that ruling." In its ruling on respondent's motion to compel in the Related Case, the trial court stated, "The court will not limit the production to documents related to the non-

5

touching companies. Responsive documents for the entire Headwaters Group must be produced."

The court's ruling in the writ proceeding did not give respondent access to all of the Group's books and records. It limited the documents subject to inspection and copying to "(1) documents relating to the issue of addition of new owners to the Headwaters Group, and (2) a capitalization table and/or materials related to capitalization calculations."

*"Sufficiently Intertwined" Standard*

Appellants contend: "[T]he Superior Court erred in using a 'sufficiently intertwined' standard which may arguably be relevant for purposes of discovery in the [R]elated [C]ase, but not under California Corporate Code sections 1601 and 1602. [Whether the trial court applied an incorrect standard] is a question of law, not involving the resolution of disputed facts, which is subject to the appellate court's independent ('de novo') review."

Appellants' claim of error is conclusory. They provide no meaningful legal analysis, with citation to pertinent authority, explaining why the trial court's "sufficiently intertwined" standard is incorrect as a matter of law. Consequently, the claim is forfeited. "[A]n appealed judgment is presumed correct . . . ." (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649.) "[I]t is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without [meaningful] argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.]

Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

In any event, the trial court did not apply the wrong legal standard. The court in effect found that the entities comprising the Group are "sufficiently intertwined" to constitute a single enterprise. Respondent makes the "single enterprise" argument in his appellate brief: "Appellants ignore the evidence . . . that supports the Superior Court's finding that the Headwaters Group acted as a single enterprise."

"'[U]nder the single-enterprise rule, liability can be found between sister companies. The theory has been described as follows: '"In effect what happens is that the court . . . has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. . . .'" [Citation.] The doctrine applies where one of the corporations ""is so organized and controlled, and its affairs are so conducted, as to make it merely an *instrumentality, agency, conduit, or adjunct of another corporation.*"" (*City of Dana Point v. New Method Wellness, Inc.* (2019) 39 Cal.App.5th 985, 990-991 (*City of Dana Point*).)

"'Under the "single business enterprise" doctrine, separate corporations may operate with integrated resources in pursuit of a single business purpose.'" (*Toho-Towa Co. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1107-1108.) Application of the doctrine is limited to situations where an inequitable result will occur if the sister companies are treated as separate entities. (*Tran v. Farmers Group, Inc.* (2002) 104 Cal.App.4th 1202, 1219.)

The single-enterprise rule has generally been applied to prevent a corporation from avoiding liability for the debt of a sister corporation. But there is no reason why the rule should not also be applied to permit a shareholder or director of a corporation to inspect records of a sister corporation under sections 1601 and 1602.

*Standard of Review*

The parties dispute the correct standard of review. Appellants claim that we should independently review the trial court's issuance of a writ of mandate because it presents a "pure question[] of law" involving the interpretation of sections 1601 and 1602. Respondent argues that we should apply the substantial evidence standard of review: "Appellants' entire argument depends upon a challenge to the Superior Court's factual determination that 'the corporate subsidiary relationship[s] are sufficiently intertwined to permit discovery relating to the entire Headwaters [G]roup.' [Record citation.] The Superior Court's finding necessarily rejected Appellants' factual assertions that the touching companies were wholly separate, independent, and divorced from the non-touching companies."

We agree with respondent. (See *City of Dana Point*, *supra*, 39 Cal.App.5th at p. 991 ["We review the court's finding [of a single enterprise] for substantial evidence"].) "Substantial evidence . . . is not synonymous with 'any' evidence, but is evidence which is of ponderable legal significance. It must be 'reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.'" (*Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 871.)

8

The substantial evidence "standard of review is highly deferential.  It has three pillars.  First, we accept all evidence supporting the trial court's order.  Second, we completely disregard contrary evidence.  Third, we draw all reasonable inferences to affirm the trial court. . . .  We do not reweigh the evidence. [Citation.]  Under this standard of review, parties challenging a trial court's factfinding bear an "'enormous burden . . . .'" [Citation.]  [¶]  If substantial evidence supports factual findings, those findings must not be disturbed on appeal. [Citation.]  Inferences favorable to appellants may create conflicts in the evidence, but that is of no consequence. [Citation.]  When a civil appeal challenges findings of fact, the appellate court's power begins and ends with a determination of whether there is any substantial evidence — contradicted or uncontradicted —to support the trial court findings. [Citation.]  We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582 (*Schmidt*).)

*Substantial Evidence Supports the Trial*
*Court's "Sufficiently Intertwined" Finding*

Substantial evidence supports the finding that the Group's companies are so intertwined that respondent's status as a director and shareholder of iO73 permits him to inspect and copy the books and records of the three touching companies.  (§§ 1601, 1602.)  The trial court could reasonably infer that the entities comprising the Group operate as a single enterprise.

The touching companies are an integral, necessary part of the Group's cannabis business.  "[T]he 'touching companies' . . . are involved in the actual growing, harvesting, etc. of cannabis,

which generates the vast majority of the revenues of the Headwaters Group."

The touching companies and iO73 share a unity of management, control, and ownership. Strauss, the sole owner of the touching companies, is the Chief Executive Officer, Secretary, and a member of the Board of Directors of iO73. Pursuant to an agreement entitled "Contribution, Exchange and Option Agreement," which was signed by Strauss and other persons in February 2018 (the February 2018 agreement), Strauss owns 490,000 of iO73's 700,000 outstanding shares. The trial court found that Strauss "maintains the books, records and documents of [the] Headwaters [Group] in Santa Barbara County."

It is reasonable to infer that Strauss was the owner in name only of the touching companies. Strauss contemplated that iO73 would become the actual owner. In the February 2018 agreement, Strauss granted to iO73 a 10-year option to acquire, "*with no further consideration*," "all of the shares and other interests he now owns or may own in the future in [the touching companies]." (Italics added.) Strauss agreed not to "take any action that would impair or negatively impact [iO73's] ability to exercise the Option or to achieve all of the economic benefits of ownership of all interests in each of the [touching companies] upon the exercise of such Option."

Although the touching companies technically are not subsidiaries of iO73, the February 2018 agreement referred to iO73 as the "Parent" of the touching companies. The term "Parent" is used where there is a parent-subsidiary relationship. (See *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 861-863.) The February 2018

agreement appears to recognize that the touching companies were operating as if they were subsidiaries of iO73.

Moreover, the February 2018 agreement allowed iO73 to exercise considerable influence over the touching companies' internal affairs. Strauss agreed "not to issue . . . any debt or equity securities without the prior written consent of Parent." In addition, he agreed "not to declare any dividend or make any distribution to any equity holder of any of the [touching companies] without the prior written consent of Parent."

Finally, "[t]he Headwaters Group . . . always managed its finances on a consolidated basis." Bonuses were calculated based on "the EBITDA of the entire Headwaters Group."

Viewing the above "evidence in the light most favorable to [respondent], [and] giving [him] the benefit of every reasonable inference" (*Schmidt*, *supra*, 44 Cal.App.5th at p. 582), we conclude the trial court could reasonably find there is ""such unity of interest[, management, control,] and ownership . . ."" of iO73 and the touching companies that ""one is inseparable from the other . . ."" (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 358.) Although iO73 and the touching companies are separate entities in form, it is reasonable to infer that in substance they are operating as a single enterprise.

Thus, "'the trial court was warranted in concluding . . . that [the touching companies were] but an instrumentality or conduit of [iO73] in the prosecution of a single venture namely, the [commercial cultivation and distribution of cannabis]. . . . There was such unity of interest and ownership that the separateness of the [touching companies and iO73] had in effect ceased and an adherence to the fiction of [their] separate existence . . . would,

11

under the circumstances here present, promote injustice and make it inequitable . . .'" to deny respondent permission to inspect the records of the touching companies under sections 1601 and 1602. (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1250.)

*New Theory Asserted in Reply Brief Is Forfeited*

For the first time in their reply brief, appellants argue that the petition for writ of mandate is "moot." Appellants' new theory is forfeited for two reasons. First, "[f]airness militates against our consideration of arguments first raised in a reply brief." (*Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 350.) Second, the argument is not supported by citations to facts in the record. "[A]n appellant must not only present an analysis of the facts and legal authority on each point made, but must also support arguments with appropriate citations to the material facts in the record. If he fails to do so, the argument is forfeited." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

Appellants' only citation to the record is to page 18, lines 1-2 of the reporter's transcript of the hearing on the petition. Appellants cite this portion of the record in support of their claim that "the parties agreed that all existing documents responsive to the Writ had been produced." But the citation does not support the claim. At page 16, lines 5-7 of the reporter's transcript, respondent's counsel said, "We have still not received the capitalization table for [i]O73, nor documents relating to bringing in new owners of the Headwaters Group . . . ."

*Respondent Is Entitled to Appellate Attorney Fees*

Pursuant to section 1604, respondent requests that he be awarded his appellate attorney fees. Section 1604 provides: "In

12

any action or proceeding under . . . Section 1601, if the court finds the failure of the corporation to comply with a proper demand thereunder was without justification, the court may award an amount sufficient to reimburse the shareholder . . . for the reasonable expenses incurred by such holder, including attorneys' fees, in connection with such action or proceeding."

A corporation liable for attorney fees under section 1604 "is . . . liable for the fees the [shareholder] incurred at trial and on appeal." (*Valtz v. Penta Investment Corp.* (1983) 139 Cal.App.3d 803, 811.) We conclude that iO73's failure to comply with respondent's demand to inspect records of the touching companies was without justification. We therefore order iO73 to pay the reasonable appellate attorney fees incurred by respondent.

### Disposition

The judgment is affirmed. The matter is remanded to the trial court with directions to award respondent his reasonable appellate attorney fees, which shall be payable by iO73 pursuant to section 1604. Respondent shall recover his costs on appeal from both appellants. (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.                    PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Trusted Legal and Naomi R. Dewey, for Defendants and Appellants.

Stradling Yocca Carlson & Rauth and Stephen L. Ram, Nicole L. Carbonel, for Plaintiff and Respondent.